STATE of Missouri, ex rel. ST. JOSEPH LIGHT & POWER COMPANY, Relator,

v.

The Honorable J. Morgan DONELSON, Judge of the Circuit Court of Putnam County, at Unionville, Missouri, Respondent.

No. WD 33181.

Missouri Court of Appeals, Western District.

Feb. 23, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 30, 1982.

Joseph K. Houts, St. Joseph, for relator St. Joseph Light & Power Co.

N. William Phillips, Milan, for respondent.

Before SOMERVILLE, C.J., and SHANGLER, PRITCHARD, WASSERSTROM, TURNAGE, CLARK and KENNEDY, JJ.

## ORIGINAL PROCEEDING IN PROHIBITION

KENNEDY, Judge.

Missouri Mining, Inc., a Missouri corporation with offices at Unionville, Missouri, in Putnam County, filed suit in the Putnam County Circuit Court against relator St. Joseph Light & Power Company for damages for breach of a contract for the sale and purchase of coal. St. Joseph Light & Power filed its "motion to dismiss or in the alternative to compel arbitration". The motion was based upon a provision in the

contract which required arbitration of any disputes arising under the contract. The motion alleged in effect that Light & Power was invoking the arbitration provision, but that Missouri Mining had (wrongfully) withdrawn from the arbitration proceeding. The motion requested that the petition be dismissed or that plaintiff be ordered to proceed with arbitration. Respondent Judge Donelson after a hearing overruled the motion and directed Light & Power to file an answer to the merits within 30 days. He indicated an intention to proceed with the case upon the merits.

At the relation of Light & Power, we issued our preliminary writ of prohibition.

The issue before Judge Donelson on Light & Power's motion to dismiss or to compel arbitration, and the issue before us on this writ proceeding, is whether the Federal Arbitration Act, 9 U.S.C.A., § 1, et seq. (1970), makes the arbitration provision contained in the parties' contract valid and enforceable in a state court proceeding. If, as we hold, the answer is in the affirmative, then the writ must be made permanent. Respon-

dent argues that the Federal Arbitration Act is not applicable and that Missouri law must be applied to the contract. Missouri law would make the arbitration agreement unenforceable and would allow Missouri Mining to proceed with its damage action upon the contract, bypassing the arbitration proceeding, § 435.010, RSMo 1978.[1]

The contract between the parties consists of 32 pages including cover, index and a map exhibit. Basically it calls for the sale and delivery by Missouri Mining to St. Joseph Light & Power Company, of large quantities of coal over a term beginning November 1, 1975, and ending March 23, 1992, with a right of termination effective March 23, 1985, in case the parties are unable to agree on an "adjusted base price". The two provisions of the contract which are central to the present controversy are § 13, Arbitration, and § 21, Construction of Agreement. These paragraphs are copied into the margin.[2]

9 U.S.C.A. § 2 (1970), upon which St. Joseph Light & Power relies, reads as follows:

1. Missouri has since adopted the Uniform Arbitration Act, § 435.350, RSMo 1978 (Cumulative Supp. 1981), but it is applicable only to contracts made after August 13, 1980. The contract now before us was dated August 15, 1975.

2. Following are the arbitration and choice of law provisions of the contract:

   *Section 13. Arbitration.*
   Except a claim for relief from economic hardship under Section 12 above, which shall not be subject to arbitration, any controversy, claim, counterclaim, defense, dispute, difference or misunderstanding arising out of or relating to the interpretation or application of this Agreement or breach thereof shall be settled by arbitration before three arbitrators, one of whom shall be by Seller, one by Buyers and a third of whom shall be named by the two arbitrators appointed by Seller and Buyers, respectively. If either Buyers or Seller fails to select an arbitrator within fifteen (15) days after receipt of written notice from the other of its election to submit a matter to arbitration and naming its arbitrator, the party giving such notice shall have the right to appoint an arbitrator for the party in default; and the two thus chosen shall then select the third arbitrator. The appointment of the third arbitrator, if not agreed upon within twenty (20) days, shall be selected by the Senior Judge then sitting in the United States District Court for the State

   of Missouri. No person shall be eligible for appointment by such Senior Judge who is not neutral and impartial as to the parties, meaning that the person shall not be a director, officer, employee, shareholder or is otherwise interested in either of the parties hereto or in the matter or matters to be arbitrated. Such proceedings will be governed by the Commercial Arbitration Rules of The American Arbitration Association then in effect, except that a stenographic transcript of the testimony and a record of the proceedings will be taken and the arbitrators shall base their decision upon the record and briefs of the parties. The brief of the complaining party shall be filed with the arbitrators within twenty (20) days after receipt of the record, and the brief of the other party shall so be filed within fifteen (15) days after receipt of the complaining party's brief. Judgment upon any valid award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Each party shall pay for the services and expenses of the arbitrator appointed by it, and all other costs incurred in connection with the arbitration shall be paid in equal parts by the parties hereto, unless the award shall specify a different division of the costs.
   *Section 21. Construction of Agreement.*
   This agreement shall be governed by, and construed according to, the laws of the State of Missouri.

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The preceding section, 9 U.S.C.A. § 1, defines "commerce" as "commerce among the several States or with foreign nations..."

1. *Whether contract involved interstate commerce.*

■ First, respondent rather mildly protests that the determination whether the contract "evidenced a transaction involving interstate commerce" was a factual determination and that no such factual determination has been made by the trial court. While the trial court made no finding upon that factual issue, it is plain enough from the record before respondent and from the briefs and oral arguments before us, that the contract involved interstate commerce. It involved shipments of coal from Centerville, Iowa, where Missouri Mining's tipple was located, to St. Joseph, Missouri. Payment for the coal was made to Missouri Mining's broker and agent in Des Moines, Iowa.

2. *Whether Federal Arbitration Act applicable in state court proceedings.*

Respondent next contends that the Federal Arbitration Act is not applicable to state courts. Respondent would not challenge the proposition that, if the litigation pending before him were pending instead in a United States District Court under its diversity jurisdiction, that court would be obliged to recognize and hold valid the arbitration provision of the contract between the parties. He argues, however, that where the action is brought in a state court in Missouri, that the state court, applying Missouri law, may disregard the agreement of the parties for arbitration and may proceed to determine the issues upon the merits.

■ We reject respondent's position and hold that Section 2 of the Federal Arbitration Act, which we have quoted above, is substantive law to be given effect in Missouri state courts, not a mere matter of federal court *procedure.* In explaining our reasons for that holding, we cannot improve upon language lifted from the perspicacious and satisfying opinion of Judge Medina in *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 407 (2d Cir. 1959), cert. granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed per stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

Thus we think the text of the Act and the legislative history demonstrate that the Congress based the Arbitration Act in part on its undisputed substantive powers over commerce and maritime matters. To be sure much of the Act is purely procedural in character and is intended to be applicable only in the federal courts. But Section 2 declaring that arbitration agreements affecting commerce or maritime affairs are "valid, irrevocable, and enforceable" goes beyond this point and must mean that arbitration agreements of this character, previously held by state law to be invalid, revocable or unenforceable are now made "valid, irrevocable, and enforceable." This is a declaration of national law equally applicable in state or federal courts. See Kochery, The Enforcement of Arbitration Agreements in the Federal Courts; *Erie v. Tompkins,* 39 Corn.L.Q. 74, 78 (1953). This conclusion

flows directly from the realization by the Congress that nothing of significance would have been accomplished without tapping these substantive sources of power. It is these that put teeth into the statute and make it accomplish the salutary and beneficial ends the Congress had in mind.

State court decisions are not in agreement among themselves, but the great weight of authority agrees with *Robert Lawrence Company v. Devonshire Fabrics, Inc.*, supra. Representing the majority view is *A/S J. Ludwig Mowinckels Rederi v. Dow Chemical Company*, 25 N.Y.2d 516, 307 N.Y.S.2d 660, 255 N.E.2d 774 (N.Y. 1970). Cert. denied 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272 (1970). Chief Judge Fuld writing for the court stressed the desirability of having the same rule (with respect to validity and enforceability of arbitration agreements involving interstate commerce) in state courts and federal courts. The opinion quotes as "most enlightening" the following language from *Bernhardt v. Polygraphic Company of America, Inc.*, 350 U.S. 198, 203–204, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956):

> If the federal court allows arbitration where the state court would disallow it, the outcome of litigation might depend on the courthouse where suit is brought... There would in our judgment be a resultant discrimination if the parties suing on a Vermont cause of action in the federal court were remitted to arbitration, while those suing in the Vermont court could not be. 255 N.E.2d at 778.

To the same effect are a number of other state decisions, including *West Point-Pepperell, Inc., v. Multi-Line Indus., Inc.*, 231 Ga. 329, 201 S.E.2d 452 (1973); *Mamlin v. Susan Thomas, Inc.*, 490 S.W.2d 634 (Tex.Civ.App. 1973); and other cases collected in an annotation entitled "Conflict of Laws as to Validity and Effect of Arbitration Provision in Contract for Purchase or Sale of Goods, Products, or Services, Annot., 95 A.L.R.3d, 1145, 1159 (1979).

Respondent urges us to follow *Pullman, Incorporated, v. Phoenix Steel Corporation*, 304 A.2d 334 (Super.Ct.Del.1973), which applied Delaware law and held an arbitration provision unenforceable, though dealing with a contract involving interstate commerce. The Delaware case represents a small minority of cases taking a similar position. They are noted in the above annotation at 1160–1161. We believe the majority view is better supported, and we join with them in holding the Federal Arbitration Act applicable in the present proceeding.

We have examined the Missouri cases cited by both parties and find that none of them really give any help on the question we are dealing with.

3. *Whether choice of law agreement has effect of adopting Missouri law to allow unilateral bypassing of arbitration agreement.*

■ Respondent then argues that § 21 of the contract, quoted in footnote 2 above, providing that the contract should be "governed by, and construed according to the laws of the State of Missouri", has the effect of adopting § 435.010, RSMo 1978, in preference to the federal statute. The argument is that the parties in Sec. 13 of the contract agreed upon mandatory arbitration, then in Sec. 21, by making Missouri law applicable, allowed either party to bypass the arbitration provision and pitch his controversy in court. We reject this position, for the same reason the Court of Civil Appeals of Texas rejected a similar argument in *Mamlin*, supra, at 637:

> When courts apply the law chosen by the parties, they do so for the purpose of giving effect to their intention. Restatement, Conflicts of Laws (Second) § 187, comment c. The law chosen by them will not be applied when it would defeat their intention by invalidating the contract, since they can be assumed to have intended that the contract be binding. *Id.*, comment e. In order to give effect to that presumed intention, when courts have a

choice of law, they will apply the law which upholds the contract. (Footnote omitted).

4. *Whether motion to dismiss or in the alternative to compel arbitration was correct procedure to present mandatory arbitration issue to trial court.*

■ Respondent challenges the procedure chosen by Relator Light & Power to present its position in the trial court. He claims that a motion to dismiss was not an appropriate vehicle to put before the court the claim that plaintiff Missouri Mining was relegated to its arbitration remedy since, as he says, this is not one of the Rule 55.27 grounds that may be presented by motion. And, he adds, the alternative motion for the court to order arbitration, although perhaps a proper subject for a counterclaim, was no proper subject to be presented by motion. Respondent is right on these points. Relator Light & Power should have asked for a stay of proceedings pending the arbitration, not a dismissal nor an order requiring arbitration. A motion for stay of proceedings has always been available and useful in certain situations, and has never needed the sanction of a specific court rule or statute. 5 Am.Jur.2d Arbitration and Award § 80 (1962). See *State ex rel. Geil v. Corcoran*, 623 S.W.2d 555 (Mo.App.1981). The order staying proceeding is the procedure which would be used in federal court under the statute 9 U.S.C.A., § 3 (1970), and also under the Uniform Arbitration Act as it now exists in Missouri, § 435.355(4), RSMo 1978 (Cumulative Supp.1981). While relator's motion in the trial court did not specifically ask for a stay of proceedings, we will fashion the relief indicated by the allegations of the motion, as the trial court could also have done. We are not limited by the prayer of the motion—so long, at least, as the relief granted is embraced within the relief requested. See *State ex rel. M.L.H. v. Carroll*, 343 S.W.2d 622, 629 (Mo.App.1969); *Wells v. Wells*, 117 S.W.2d 700, 703 (Mo. App.1938).

5. *Whether relator's remedy by appeal is adequate.*

■ Respondent then says that prohibition is not the proper remedy in this case—that the trial should proceed, then the arbitration issue should be taken up on appeal if relator loses in the trial court and appeals the ultimate judgment. He says that the remedy by appeal is adequate, so that we should in our discretion deny the writ. *State ex rel. Berbiglia v. Randall*, 423 S.W.2d 765 (Mo. banc 1968); *State ex rel. Bonzon v. Weinstein*, 514 S.W.2d 357 (Mo. App.1974); *State ex rel. Schoenbacher v. Kelly*, 408 S.W.2d 383 (Mo.App.1966). The claim is one which is closely considered at the preliminary writ stage, and less so after the parties have briefed and argued the case on the merits.

Since the preliminary writ has been issued and the parties have thoroughly briefed and argued the arbitration issue here, we elect to decide it upon the merits. *State ex rel. McClellan v. Kirkpatrick*, 504 S.W.2d 83, 85, note 1 (Mo. banc 1974).

The preliminary writ heretofore issued is made absolute to this extent: The proceedings in the underlying cause are stayed and respondent is prohibited from proceeding with pleadings, discovery or trial until the arbitration is concluded either by the rendition of an award, or terminated by agreement of the parties, default of party requesting arbitration, or by some other event. 5 Am.Jur.2d, Arbitration and Award § 80 (1962).

All concur.